(118 So. 228)

## WESTERN UNION TELEGRAPH CO. v. KIDD. (6 Div. 414.)

Court of Appeals of Alabama.   Oct. 9, 1928.

Francis R. Stark, of New York City, Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, and A. F. Fite, of Jasper, for appellant.

L. D. Gray, of Jasper, for appellee.

RICE, J.  Plaintiff, or his wife, received at Jasper, Ala., two telegraphic messages sent from Oakland, Cal., in the name of Elmer M. Kidd, plaintiff's son, requesting money by wire.  One message called for $62.77, and the other, $75.  Plaintiff delivered to defendant the respective sums, on different dates, directing that same be transmitted to Elmer M. Kidd at Oakland, paying the charges exacted by defendant for the service.  The money transfers were sent as directed.  At the Oakland office of the defendant, the person who had sent the messages to plaintiff, or his wife, at Jasper, called for the money.  After producing letters addressed to Elmer M. Kidd and government papers showing the discharge of Elmer M. Kidd from the army, and after satisfactorily answering questions propounded by defendant's agent relating to his personal identity as Elmer M. Kidd, the money was delivered to him.  There is no doubt that this person who sent the messages requesting the money and who received the money was an imposter.

Plaintiff sued defendant for breach of its agreement, by failing to deliver the money in question to Elmer M. Kidd, or his order. The trial was had before the court, without a jury, and judgment went for plaintiff.

A theory of the defense was that at the time these money transfers were made the defendant had blank application forms, setting forth the provisions and regulations under which the transfer of money would be undertaken.  These forms, provisions, and regulations had been filed with and approved by the Interstate Commerce Commission in accordance with the Interstate Commerce Act. These blank application forms were used in this case.  On the face of them appeared the following provisions:

"Positive evidence of personal identity is not to be required from the payee, and I authorize and direct the telegraph company to pay the sum named in this order at my risk to such person as its agent believes to be the above named payee, unless the following is signed.

"Positive Identification Required.

"I desire that the above-named payee shall be required to produce positive evidence of personal identity before payment is made.
"Signature ————————."

It is asserted by defendant that by reason of plaintiff's failure to attach his signature to the provision for positive personal identity of the payee, the waiver provision applied; was, by reason of the act, a part of the contract between the parties. Plaintiff's reply to this defense was that at the time he negotiated these money transfers defendant's agent furnished him no blanks to be filled out; that he (plaintiff) was ignorant of the quoted provision; that when he inquired of defendant's agent if there was anything for him to sign, said agent told him there was not, and thus deprived him of any opportunity to stipulate for positive personal identity of the payee.

The evidence as to what occurred between the plaintiff and the defendant's agent at its Jasper office is in conflict. While plaintiff's testimony tends to show that he was totally ignorant of any provision relating to identification of the payee, that the agent filled out the blanks without allowing plaintiff to see them, and that said agent told plaintiff there was nothing for him to sign, the testimony for defendant tends to show that the agent, in filling out the blanks, acted at plaintiff's special instance and request. All the testimony relating to the payment of the money is to the effect that it was paid to the person, who, representing himself to be Elmer M. Kidd, had sent the messages requesting that the money be sent; that said person satisfactorily answered questions propounded by the defendant's agent at Oakland, relating to the personal history of Elmer M. Kidd; that said person produced letters addressed to Elmer M. Kidd and government papers showing the discharge of said Kidd from the army. There is no evidence suggesting the presence of any circumstance calculated to arouse suspicion in the premises.

Defendant insists that the waiver provision became and was binding upon plaintiff by reason of his failure to stipulate by signing, for positive personal identification—was binding regardless of plaintiff's lack of notice thereof. This point we deem it unnecessary to decide for the reasons now to be stated.

It is to be borne in mind that plaintiff declares upon the breach of a contract. His theory is, as shown by his evidence and his argument, that the quoted provisions were without any binding force by reason of the fact that he had no knowledge of their existence; that he signed no agreement and authorized no one to sign for him. Thus repudiating it, his complaint could not rest upon the stipulation for positive personal identification in the terms as written upon the application form. If, then, the quoted provisions be eliminated from consideration and plaintiff's action be referred to such a contract as the law would imply in the absence of agreement by the parties, still, under the evidence, plaintiff would not be entitled to recover. No negligence being shown to have characterized the conduct of the defendant, nothing to generate suspicion being shown, the telegraph company in paying the money in question to the person who sent the messages requesting the money, after said person had answered inquiries and produced documents apparently identifying himself as the payee, was not liable even though said person turned out to be an imposter. Western Union v. Meyer, 61 Ala. 158, 32 Am. Rep. 1; 10 A. L. R. 828.

After careful consideration of the entire record, we are of opinion that the trial court erred in rendering judgment for the plaintiff. That judgment will be here reversed and the cause remanded.

Reversed and remanded.