**SOUTHWESTERN INV. CO. v. ERWIN.**

**No. 5875.**

Court of Civil Appeals of Texas. Amarillo.

June 7, 1948.

Rehearing Denied July 5, 1948.

Simpson, Clayton & Fullingim, of Amarillo, for appellant.

H. H. Cooper, ot Amarillo, for appellee.

PITTS, Chief Justice.

Appellee, C. B. Erwin, sued appellant, Southwestern Investment Company, for damages by reason of the alleged conversion of a Lincoln Zephyr automobile of the agreed value of $1300. The case was tried before a jury which passed on issues of exemplary damages only which issues were not brought forward on appeal. The trial court rendered judgment for appellee as a matter of law for his damages in the sum of $1300 by reason of conversion by ap-

pellant of the said automobile and the case is before us on the law question only.

There are few, if any, controverted facts. The record reveals that appellee delivered his said automobile to L. W. Dunn, a dealer in used automobiles doing business in Amarillo, to sell the same for him, after having had some repairs made thereon, and he likewise delivered to L. W. Dunn the certificate of title to the said automobile endorsed by appellee on the back thereof in blank. Thereafter Dunn went to the Amarillo office of appellant, which was engaged principally in the business of financing, wholesaling and floor planning motor vehicles for new and used car dealers, one of which was L. W. Dunn, and there Dunn represented to appellant that he was the owner of the automobile and procured a loan in the sum of $1540 from appellant on the said automobile. Dunn executed a note to appellant to cover the loan, delivered to appellant a trust receipt for possession of the automobile and the certificate of title to the automobile, which certificate bore the endorsement in blank of appellee; soon thereafter Dunn took possession of the automobile after it was repaired, placed it on his lot for sale and later disappeared without selling the automobile or liquidating any part of the loan appellant had made on the same. When appellant learned of Dunn's disappearance, it located the automobile, took possession of it, filled out and notarized the blank transfer of title showing a transfer from appellee to Dunn over appellee's signature, obtained a new repossessed certificate of title and sold the automobile to liquidate the loan it had made on the same. Appellee learned of the disappearance of Dunn, located the said automobile on the lot of Heath and Conner, automobile dealers, where appellant had placed the automobile for sale. Appellee filed suit against appellant for possession of the automobile but took a nonsuit after the case was tried and before a decision was rendered and thereafter filed this suit.

Appellant defended this suit upon the ground that appellee delivered possession of the automobile and the certificate of ti-

tle thereto, signed in blank by appellee, to L. W. Dunn, known to both appellee and appellant to be a dealer in used motor vehicles, in order that L. W. Dunn might act as agent for appellee in selling the said automobile; upon the further ground that the transfer on the back of the certificate of title was signed in blank by appellee in order that Dunn might consummate the sale promptly when made to a third party without having to find appellee to have further action taken by him in order to consummate the sale. These facts are admitted by appellee. Because of these admitted facts appellant further defends on the ground that appellee clothed L. W. Dunn with every indicia of title to the automobile that could have been given to Dunn, who represented to appellant that he owned the automobile, and that appellant, without notice or knowledge that Dunn was such agent for appellee, made the loan to Dunn in due course and in good faith and in conformity with business relations theretofore had as a finance company with L. W. Dunn as a retail dealer in used motor vehicles; that appellee by reason of his having clothed Dunn with possession and such evidence of ownership of the automobile for the express purpose of holding himself out to the public as being the owner thereof, had thereby held Dunn out to the public, including appellant, as the owner of the automobile and thus made it possible for L. W. Dunn to perpetrate a fraud upon appellant; that by reason of such acts of appellee and by reason of such loan having been made to Dunn in good faith by appellant, believing Dunn owned the automobile, appellant had a valid and subsisting lien on the automobile for the amount of the loan; and that appellee is estopped to claim that L. W. Dunn was not the owner of the automobile as against appellant or that Dunn was not authorized to borrow money on the automobile and that appellee is likewise estopped to claim ownership of the automobile himself as against appellant, which dealt with Dunn upon apparent ownership purposely made possible by appellee.

In the case of Crockett v. Rogers, Tex.Civ.App., 137 S.W.2d 185, 190, the court held:

"That where the true owner of property holds out another, or allows another to appear, as the owner of, or as having full power of disposition over, the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected; or, where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of these who caused such action, the rights so acquired are secure, whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from an act of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale."

In that case the question involved was the assignment of notes and the contention was made that the assignment was not legal because of a failure to comply with the Negotiable Instruments Act, Vernon's Ann. Civ.St. art. 5932 et seq. The court held that such did not prevent the application of the rule of equitable estoppel and further expands the rule as follows:

"It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance." Many authorities are there cited in support of the stated rule.

In the instant case appellee admitted that he permitted Dunn to hold himself out and appear as the owner of the automobile and that he did all he knew to do to place Dunn

in position to dispose of the automobile and that he might dispose of it without appellee having to have anything further to do in connection with the sale. Appellant was thereby innocently induced by Dunn to make the loan secured by a lien on the automobile, which loan and lien matured· thus giving appellant an acquired property right in the automobile in derogation of the secret of agency or undisclosed claims of appellee.

█ Appellee charges that the transfer signed in blank by him had not been notarized and was not therefore legal. Apparently he did not know it had not been notarized immediately after he signed it and before all of the transactions above referred to were had between appellant and Dunn and he evidently intended for it to be notarized because he admitted that he knew a certificate of title was the only evidence of ownership of an automobile that a person has and he knew that the certificate of title was evidence of ownership of the automobile when he turned it over to Dunn. He further admitted that he knew when he endorsed the certificate of title and gave it to Dunn, that Dunn would have every possible evidence of ownership of the automobile. Appellee further admitted that he did all he could to invest Dunn with the necessary authority to dispose of the automobile without him having to have anything further to do in connection with the sale. He further testified that he "transferred the title to Dunn in blank" and that he understood he was transferring the title in blank when he signed the back of the certificate and that he knew that Dunn thereafter had the automobile exhibited on his car lot offering it for sale. The record shows conclusively that it was customary in Amarillo, at the time appellee signed in blank the transfer on the back of the certificate of title, for owners of automobiles to sign a transfer of title in blank and so deliver the same to finance companies and used ·car dealers when they sold or financed such automobiles with such parties. The custom was further established that when such automobile is resold, or a loan is liquidated, the name of the purchaser is filled in the blank space without the name of the dealer or finance company appearing in the chain of title to the automobile. In the case of McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144, the Supreme Court held that such a practice does not jeopardize the rights of a dealer since he is not required to procure a certificate of title immediately after purchasing a vehicle. At any rate under the rule of law stated in the Crockett–Rogers case above cited any such irregularities would not prevent the application of the rule of estoppel in such cases. Applying the rules there laid down it appears that appellee is estopped from asserting ownership of the automobile in question as against appellant, a creditor of Dunn and an innocent lien holder by reason of appellee's having made Dunn an apparent owner of the automobile.

In the case of Sackenreuther v. Winston, Tex.Civ.App., 137 S.W.2d 93, 97, writ refused, the court said:

"Thus 'where the real owner, by some act or conduct of his, vests the possession and right to personal property apparently in the seller, he thereby estops himself from setting up a claim to them as against a purchaser for value without notice.' "

Such rules stated above are supported also by Texas Pipe Line Co. v. Cozart, Tex.Civ.App., 38 S.W.2d 903, writ dismissed, and Kelly v. Aransas Compress Co., Tex.Civ.App., 91 S.W.2d 1156, writ dismissed.

█ If it be conceded that appellee was not negligent in handling the transactions as he did and in thus making Dunn the apparent owner of the automobile, yet he made it possible by his own acts and conduct for Dunn to practice a fraud upon both appellant and appellee. In that event the rule is well established that where one of two persons equally entitled to consideration as far as their purposes are concerned must suffer from a delinquency of a third person, the loss must properly fall upon him who made such practice of fraud possible. Parma v. First Nat. Bank of Cameron, Tex.Com.App., 63 S.W.2d 692, Commission of Appeals. When appellee made it possible for Dunn to appear as the

ostensible owner of the automobile and thus afforded him an opportunity to borrow money from appellant in a sum in excess of the value of the automobile and give appellant a lien thereon and then fail to liquidate the loan or to account to appellee for any of the proceeds thereof, Dunn practiced a fraud upon both appellee and appellant. Appellee's acts and conduct made such possible and, applying the above rule, he should suffer the loss as between him and appellant. The fact that appellee was not negligent, if he were not, in trusting the possession of the automobile and the certificate of title with Dunn, does not change the rule. Gillette v. Houston Nat. Bank, Tex.Civ.App., 139 S.W.2d 646, writ dismissed, judgment correct.

The fact that appellant made a loan to Dunn on the automobile in question and took a trust receipt and the certificate of title endorsed by appellee, which constituted nothing more than a lien on the automobile securing the note Dunn gave appellant, as compared to an outright purchase for value, does not change the rules heretofore announced. Scruggs v. Crockett Automobile Co., Tex.Civ.App., 41 S.W.2d 509, writ dismissed. This rule is further expanded and approved in the case of First State Bank of Agua Dulce v. First Nat. Bank of Robstown, Tex.Civ.App., 282 S.W. 846, 849, writ dismissed, in which case the following language is used:

"It is now a well established principle that where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear, as the owner of or as having full power of disposition over the property the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Or where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secure whether contested at law or in equity. Such rights do not depend upon the actual title or right of the party with whom they have directly dealt, but are derived from the conduct of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale."

Appellee having made Dunn the apparent owner of the automobile and Dunn, taking advantage of appellee's acts, pretending to be the owner of the automobile, procured a loan from appellant in due course, appellee cannot, after equities have arisen in favor of appellant, deprive appellant, as a lender, of the rights that arose through and from the personal acts of appellee himself. Anderson v. Hale, Tex.Civ.App., 144 S.W.2d 318. In order for the rules heretofore announced to apply, it is not necessary that appellee invest Dunn with evidence of ownership designedly for the purpose of deceiving a third person. Glaser v. Henderson, Tex.Civ.App., 2 S.W.2d 987, and other authorities there cited.

A regrettable hardship will necessarily have to be endured by one of the parties to this suit, however, the unfortunate result had its source in the misplaced confidence of appellee in delivering possession of the automobile and the evidence of ownership thereof to Dunn in the first instance. Therefore, if either of the parties must suffer by reason of the deceit of Dunn, it is more consonant to reason that appellee should suffer rather than appellant since appellee was the one who put trust and confidence in Dunn, the deceiver, in the first instance. Such doctrine is supported by a Supreme Court opinion in the case of West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090, section 24. Such rule is again followed in the case of Western Union Tel. Co. v. Cosby, Tex.Civ.App., 99 S.W.2d 662, writ dismissed.

If it be held that the certificate of title act had not been fully complied with in this case because the transfer on the back of the certificate of title had been signed in blank by appellee without having been notarized, yet under the admitted facts, the transactions constituted, at least, a binding contract of sale between appellee's agent and appellant by which appellee is bound and he is barred from recovering judgment against appellant for the value of the automobile. Elder Chevrolet Co. v.

86

Bailey County Motor Co., Tex.Civ.App., 151 S.W.2d 938, and Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 177 S.W.2d 802.

It is our opinion, in any event, for the reasons heretofore stated, that it was error for the trial court to render judgment for appellee. The judgment of the trial court is therefore reversed and judgment is here rendered that appellee take nothing by reason of his suit.